FILED

2010 Aug-23  PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED TRANSPORTATION UNION,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:10-cv-0076-AKK** |
| | ) | |
| **BIRMINGHAM SOUTHERN RAILROAD COMPANY,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Presently before the court is Plaintiff United Transportation Union's ("Plaintiff") Motion for Summary Judgment, doc. 15, and Defendant Birmingham Southern Railroad Company's ("Defendant") Motion to Dismiss or, in the Alternative, for Summary Judgment, doc. 17.  The parties have responded, docs. 21 and 22, and replied, docs. 23 and 24.  Accordingly, this matter is ripe for this court's review.

Plaintiff's motion for summary judgment asks this court to set aside arbitrator Sean Roberts' ("Roberts") December 3, 2009, award referring the parties' dispute to a Railway Labor Act ("RLA"), 45 U.S.C. § 153 Second, merit public law

board ("PLB").  Plaintiff contends that Roberts exceeded his jurisdiction and

applied his own brand of industrial justice when he ignored the plain language of

the parties' agreement to arbitrate.  Defendant's motion requests this court to

dismiss this case for lack of jurisdiction, or in the alternative, affirm the arbitrator's

award.  For the reasons discussed fully below, Defendant's motion to dismiss is

DENIED, but its motion for summary judgment is GRANTED.  Plaintiffs' motion

for summary judgment is DENIED.

## I.  BACKGROUND

The material facts are undisputed.  Defendant is a common railroad carrier

based in Fairfield, Alabama.  Doc. 18 at 10; RLA, 45 U.S.C. § 151 First.[1]  Plaintiff

is a national labor organization that represents Defendant's employees in four

crafts: train service, locomotive firemen and hostlers, maintenance of way

---

[1] As a common carrier, Defendant is subject to the RLA, which promotes "nonjudicial
processes of negotiation, mediation and arbitration for the adjustment of labor disputes."  *Bhd of
Trainmen Enter. Lodge, No. 27 v. Toledo*, 321 U.S. 50, 58 (1944) (citation omitted).  The RLA
provides mechanisms for parties to resolve disputes: (1) "changes to an existing collective
bargaining agreement may be arbitrated only with the mutual consent of *both parties*" or
voluntary arbitration, pursuant to 45 U.S.C. § 157, *Ry. Labor Exec. Assn. v. So. Pac. Transp. Co.*,
7 F.3d 902, 904, and (2) "disputes between an employee or group of employees and a carrier or
carriers growing out of grievances or out of the interpretation or application of agreements
concerning rates of pay, rules, or working conditions"can be arbitrated upon the request of either
party before public law boards.  45 U.S.C. § 153 First (i); *see also* 45 U.S.C. § 153 Second.
Congress created this second method of resolving disputes to relieve the backlog of cases before
the National Railroad Adjustment Board.  *Bhd. Of Locomotive Engineers Int'l Union v. Union
Pac. R.R. Co.*, 134 F.3d 1325, 1330 (8th Cir. 1998) (citation omitted). This lawsuit centers on the
parties' disagreement as to the proper entity to hear one of their disputes.

employees, and clerical employees.  Doc. 18 at 11.

The parties do not enter into national negotiations.  Instead, they negotiate local mediation agreements for each craft Plaintiff represents.  *Id*.  From July 30, 2004, through April 7, 2005, the parties entered into four separate local mediation agreements that they patterned, to some extent, after the 2002 National Agreement between Plaintiff and the National Carriers' Conference Committee, the national railroad company representative.  *Id*.  The 2002 National Agreement provided for general wage increases ("GWI") until December 1, 2004, and employee healthcare cost sharing.  Doc. 18-3 at 6-7.  The parties' local mediation agreements provided for GWI's of a lesser value than the 2002 National Agreement through 2010, and no employee healthcare cost sharing.  Doc. 18-3 at 7.  Both agreements provided for cost-of-living increases ("COLA").  Docs. 18-6 at 31 through 18-7 at 20. However, in anticipation of a subsequent national agreement, the local mediation agreements stated in Article II, Part B that "the [COLA] payable under this part will be disposed of in the manner provided in the next national agreement after 2004."  Doc. 18-6 at 34; *see also id*. at 66, 80; doc. 18-7 at 11.

Arbitration Board No. 591

In 2006, the parties negotiated unsuccessfully to amend the local mediation agreements to include health care cost sharing  Doc. 18-3 at 6.  As a result, they

referred the dispute to binding arbitration pursuant to the RLA, 45 U.S.C. § 157[2].

Arbitration Board ("ARB") No. 591 convened to resolve the dispute and issued on

July 31, 2007, Award No. 1, *id*., which the parties adopted, that provided for an

increase in GWIs consistent with the National Agreement and that "one (1) cent per

hour [COLA] which was payable July 1, 2006 to employees covered by the [2002]

National Agreement will become payable to the employees covered by this

Agreement and shall be rolled into their basic rates of pay, notwithstanding the

terms of Article II, Part B of the [Local] Mediation Agreement."  Doc. 18-3 at 13,

16, 19, and 22.

Arbitration Board No. 594

  A new National Agreement was executed July 1, 2008, and provided for

retroactive GWIs and that "[a]ll [COLA] payments made under the 2002 [National]

Agreement to employees for periods on and after July 1, 2005 shall be recovered

from any retroactive wage increase payments made under Article I of this

---

[2] Section 7 of the RLA provides, in pertinent part:

Whenever a controversy shall arise between a carrier or carriers and its or their
employees which is not settled either in conference between representatives of the
parties or by the appropriate adjustment board or through mediation, in the
manner provided in sections 151 - 156 of this title, such controversy may, by
agreement of the parties to such controversy, be submitted to the arbitration of a
board of three (or, if the parties to the controversy so stipulate, of six) persons.

45 U.S.C. § 157 First.

Agreement." Doc. 18-5 at 4. As a result, Defendant "took the position that because employees covered by the 2008 National Agreement were required to give back the COLA payments they had received from 2005 to 2008, [Defendant's] employees were likewise required to give back COLA payments that they had received from 2006 to 2008, under the 'will be disposed of in the same manner provided in the next national agreement' provision in the 2004-05 Local Agreements." Doc. 18 at 12-13. On September 1, 2008, Defendant "stopped the payment of COLA increases that had been implemented from 2006 to 2008." *Id.* at 15.

In light of Plaintiff's disagreement with Defendant's interpretation of the parties' agreements, the parties submitted their dispute to ARB No. 594, pursuant to Paragraph sixteen of their arbitration agreement, which stipulated, among other things, that: "Any difference arising as to the meaning or the application of the provisions of the Board's award will be referred to the Board for a ruling, and such ruling, when acknowledged in the same manner and filed in the same district court clerk's office as the original award, will be a part of and will have the same force and effect as such original award." Doc. 18-3 at 29-30, 33. The ARB No. 594 arbitrators posited the issue as, "Does the Agreement between [the parties] provide [Defendant] with the right to re-coop [sic] the [COLAs] paid to the employees after

2004?" *Id*. at 33. On November 29, 2008, the arbitrators sided with Plaintiffs: "The Board finds in favor of [Plaintiff] and orders that no COLA payments are to be re-couped or withheld from the paychecks of the four [Plaintiff] represented groups. In the event any payments have been withheld, they are to be reimbursed to the employees within thirty (30) days." Doc. 18-3 at 39.[3]

On March 24, 2009, Defendant filed a lawsuit seeking declaratory relief and to "impeach and set aside" ARB Nos. 591 and 594 because they "do[ ] not conform, nor confine itself, to the stipulations of the agreement to arbitrate entered into by [the parties]." *BSR v. UTU,* Case No. 2:09-cv-579 (N.D. Ala.), doc. 1 at ¶¶ 7 and 9. The parties filed cross motions for summary judgment, *id*. docs. 15 and 17, and on June 10, 2010, Magistrate Judge John Ott entered a Report and Recommendation ("R&R") to grant the Union's motion for summary judgment, and deny the Company's motion for summary judgment. *Id*. at doc. 26. The Company objected to the R&R on July 2, 2010, *id*. at doc. 29, and the Union responded on July 16, 2010, *id*. at doc. 30. Judge Robert Propst overruled Defendant's objections and affirmed the R&R on July 22, 2010, *id*. at doc. 31, and entered a Final Judgment Order Dismissing Case on August 12, 2010, *id*. at doc. 32.

---

[3] Joseph Cassidy, Jr., who Defendant selected for the Board, dissented. Doc. 18-3 at 28.

Public Law Board No. 7309

Defendant interpreted the 2004-2005 local mediation agreements' language

that COLA payments "will be disposed of in the manner provided in the next

national agreement" to mean also that it could "stop making COLA payments to its

employees *going forward.*"  Doc. 18 at 15 (emphasis added).  Plaintiff disagreed,

doc. 18-2 at 56, and Defendant initiated the process to create a Public Law Board

("PLB") to arbitrate the disagreement regarding whether it "is entitled under the

2004-05 Local Agreements to discontinue payment of COLA prospectively."  Doc.

18-2 at 50;  RLA, 45 U.S.C. § 153 Second (second paragraph).[4]  Defendant

requested "the appointment of a procedural neutral to determine all matters with

respect to the establishment and jurisdiction of this [PLB]."  Doc. 18-2 at 72.

Plaintiff objected to the creation of a PLB, asserting an estoppel and *res judicata*

argument that ARB No. 594 "decisively and unequivocally resolved the COLA

dispute in its Award No. 1 with respect to any recovery – including a 're-coup' of

_____

[4] The statute states the following, in pertinent part:

If written request is made upon any individual carrier by the representative of any
craft or class of employees of such carrier for the establishment of a special board
of adjustment to resolve disputes otherwise referable to the Adjustment Board, [ ],
or if any carrier makes such a request upon any such representative, the carrier or
the representative upon whom such request is made shall join in an agreement
establishing such a board within thirty days from the date such request is made.

45 U.S.C. § 153.

COLA already paid as well as any withholding attributable to a recovery of COLA from the daily rate."  Doc. 18-2 at 57.

PLB No. 7309 was created to resolve the parties' dispute.  The National Mediation Board[5] assigned Sean Rogers ("Rogers") as the procedural neutral.  Doc. 18-3 at 3.  Defendant submitted the following issues:

Procedural Issue Presented

1.      Does Public Law Board No. 7309 have jurisdiction over the merits question that [Defendant] has presented to the Board?

Merits Questions

1.      Was [Defendant's] prospective elimination, effective as of September 1, 2008, of all COLA paid pursuant to the terms of the parties' Mediation Agreement dated July 30, 2004, consistent with the parties' agreement?

2.      If the answer to Question (1) is no, what remedy is appropriate?

Doc. 18-1 at 19.

Plaintiff presented the following issues:

1.      Shall [Defendant] be permitted to re-arbitrate an issue already decided by Special Board of Adjustment [ ] 594, Award No. 1?

2.      Alternatively, in the event the carrier is permitted to move to a merits Board, shall the matter be referred to SBA 594 as it involves an interpretation of that Board's award?

---

[5] The National Mediation Board promotes arbitration and selects arbitrators for the railroad under the RLA.  45 U.S.C. § 151 *et seq*.

Doc. 18-8 at 20.  Plaintiff argued that (1) "ARB No. 594 already addressed and ruled on the COLA payment issue," doc. 20 at 12; doc. 18-8 at 29-34, and (2) even if *res judicata* did not apply, pursuant to Paragraph Sixteen, any dispute with regard to Arbitration Board 594's award must return to Board 594, doc. 20 at 12-13; doc. 18-8 at 35-36.  Because Plaintiff advanced an argument based on estoppel and *res judicata*, Defendant argued, among other things,[6] that "[Plaintiff's] objection runs to the *merits* of [Defendant's] claim, or at least to the *merits* of [Plaintiff's] defense to the claim," which is "not sufficient to preclude merits consideration [ ] by the Board."  Doc. 18-1 at 33.

On December 3, 2009, Rogers found that the parties agreed that "the dispute before this *procedural* Board concerns the jurisdiction, or power, of this Board to decide the *merits* questions.  In this regard, the statements of the issue are not significantly different."  Doc. 18-1 at 4 (emphasis in original).  As such, Rogers stated the issue as whether a PLB "has jurisdiction over the [Plaintiff's] claim that [Defendant's] September 1, 2008 elimination of all [COLA] violated the parties' collective bargaining agreement?  If the answer is *YES*, then what shall be the remedy?"  *Id.*

---

[6] Defendant's other arguments addressed the merits of ARB No. 594, and not the specific procedural issue.  *See* doc. 18-1 at 42-49.

As it relates to Plaintiff's *res judicata* and estoppel arguments that the ARB

No. 594 award "decisively and unequivocally resolved the COLA dispute" which is

"final and binding," Rogers held that it was a defense on the merits that "is not a

basis not to refer the dispute to a merits Board."  Doc. 18-1 at 13.  Further,

regarding Plaintiff's argument that a dispute over the meaning of ARB No. 594

should be referred back to it for resolution, he held that, (1) "at any time before or

during the creation of this Board . . ., [Plaintiff] could have requested the dispute be

referred back to PLB 594," but, instead, "steadfastly maintained the merits

defense," and (2) "referral by an RLA § 3 procedural Board [PLB No. 7309] to an

RLA § 7 Board [SBA No. 594] is contrary to the provisions of the RLA and not

supported by precedent.  Simply stated, this Board has no power to refer the merits

dispute to SBA 594." Doc. 18-1 at 13-14.  Rogers found that "the dispute over

COLA payments must be referred to a merits PLB 7309 for hearing and

resolution."  *Id*.  In response to Rogers' award, Plaintiff filed this action on January

14, 2010, requesting a judgment that Rogers "exceeded his jurisdiction," and that

the award "be set aside."  Doc. 1 at 3.

## II.  APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint

fails to state a claim upon which relief can be granted.  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations as true. *See, e.g., Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 129 S. Ct. at 1950.

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden

then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A federal court's review of an arbitration award is extremely narrow, *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) (citations omitted), and limited as follows in the *Steelworkers Trilogy*:[7]

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator.  It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Enterprise Wheel*, 363 U.S. at 599.  "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38

---

[7] *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960).

(1987). Further, "[i]n order to prevail on its claim, [Plaintiffs] must refute every reasonable basis upon which the arbitrator may have acted." *See Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1264 (11th Cir. 1996) (citation omitted).

"The RLA governs labor relations in the railroad industry and prescribes mandatory procedures for the resolution of disputes." *Bhd. of Locomotive Eng'rs and Trainmen v. CSX Transp., Inc.*, 522 F.3d 1190, 1193 n.1 (11th Cir. 2008). "Such arbitration can occur before the National Railroad Adjustment Board [ ], a permanent arbitration board established by the RLA, 45 U.S.C. § 153 First. Alternatively, arbitration can occur before [a PLB] that the carrier and union create . . . which consist[s] of representatives designated by the carrier and the union and a neutral arbitrator." *Id*. (citing 45 U.S.C. § 153 Second; *Int'l Bhd. Of Elec. Workers v. CSX Transp., Inc.*, 446 F.3d 714, 717 (7th Cir. 2006).

The RLA authorizes PLBs to resolve "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i) and Second (second paragraph). Judicial review of PLBs "is among the narrowest known to law." *Bhd. of Maint. of Way Emps. v. Terminal R.R. Ass'n*, 307 F.3d 737, 739 (8th Cir. 2002); *Bhd. of*

*Locomotive Eng'rs Int'l Union v. Union Pac. R.R. Co.*, 134 F.3d 1325, 1330 (8th Cir. 1998) ("The scope of judicial review of a PLB's decision under the RLA is quite narrow.").  "PLBs findings and its order are conclusive on the parties," and will be set aside only for (1) failure to comply with RLA requirements, (2) failure to "conform or confine itself" to matters within its jurisdiction, or (3) fraud or corruption by a member.  45 U.S.C. § 153 First (q); *Bhd. of Locomotive Eng'rs*, 134 F.3d at 1330 ("The PLB's decision is 'final and binding upon both parties to the dispute.'" (citing 45 U.S.C. § 153 Second)).

### III.  ANALYSIS

**A.      Rogers' award is final and appealable.**

Defendant argues that "the court lacks jurisdiction to review the procedural award of PLB 7309 because it is not a final award resolving all the issues submitted" since it purportedly failed to address the merits of the parties' dispute. Doc. 18 at 20.  Notably, Defendant failed to cite any cases under the RLA holding that a PLB's procedural award finding that the parties' dispute required referral to a merit PLB was not final.  *See* doc. 18 at 20-24.  Plaintiff agrees that an "award to be appealable [ ] must be 'final,'" doc. 22 at 6, but argues that the award was final because "the arbitrator's function ceased with his determination and he has nothing further to do with regard to this matter."  Doc. 22 at 7.

PLB "awards shall be final and binding upon both parties to the dispute." 45 U.S.C. § 153 Second (second paragraph). Under the RLA, "an award is unenforceable unless final." *See United Transp. Union v. Gateway West. Ry. Co.*, 284 F.3d 710, 713 (7th Cir. 2002). "[A]n arbitration award, to be final, must resolve all the issues submitted to arbitration, and that it must resolve them definitely enough so that the rights and obligations of the two parties, *with respect to the issue submitted*, do not stand in need of further adjudication." *Rocket Jewelry Box v. Nobel Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998); *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999) ("Normally, an arbitration award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration, even though the arbitrators purport to retain jurisdiction in the event the need arises to resolve some subsidiary matter."). A final arbitration award does not require resolution on "every outstanding issue that might arise in later litigation between the parties." *Rocket Jewelry*, 157 F.3d at 177.

Rogers was "limited to determining whether the parties' dispute involves the interpretation and application of a labor agreement which must be referred to arbitration on the merits." Doc. 18-1 at 12. Specifically, the issue was "constrained" to whether the PLB had "jurisdiction over the merits of the parties' dispute over the prospective elimination of COLA payments." Doc. 18-1 at 9.

Rogers held that Plaintiff's "substantive arbitrability defense, against the referrals of this dispute to the merits board, is a defense on the merits," and that it was not "a basis not to refer the dispute to a merits Board."  Doc. 18-1 at 13.  Further, Rogers held that he "has no power to refer the merits dispute to SBA 594" because it is "contrary to the provisions of the RLA and not supported by precedent."  Doc. 18-1 at 14.  Therefore, Roberts decided the only procedural issue put before him – essentially that Plaintiff's merit-based defense is subject to the jurisdiction of a merit PLB.  The parties required no further adjudication on that procedural issue.  That the merit issue is a hybrid of substantive and procedural issues does not negate that Rogers decided the sole threshold jurisdictional issue before him – i.e., whether a merit PLB will hear the parties' dispute.  Therefore, Rogers' award is "final and binding" and subject to this court's review.  *See* 45 U.S.C. § 153 Second (second paragraph).

**B.**   **Limited Judicial Review of Rogers' Procedural PLB No. 7309 Award.**

This court's review is limited to the narrow ground of whether Rogers' decision is subject to court interference.  Significantly, juxtaposing the circumscribed judicial review of arbitration awards with the RLA's additional constraints on judicial oversight, the threshold issue is not whether this court agrees with Rogers' interpretation, but instead, whether he "conform, or confine [himself],

to matters within the scope of [his] jurisdiction."  45 U.S.C. § 153 First (q).[8]

Plaintiff concedes that its *res judicata* and estoppel arguments are properly

under the jurisdiction of a merit PLB.  Doc. 22 at 6; *see also Int'l Bh. of Electrical*

*Workers, Local Union 199 v. United Telephone Co. of Fla*, 738 F.2d 1564, 1571

(11th Cir. 1984) ("This severely circumscribed judicial role does not allow courts to

impose rules of precedent or to deprive arbitrators of jurisdiction to decide matters

of contract interpretation."); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.* 207 F.3d

1126, 1132 (9th Cir. 2000) ("A *res judicata* objection based on a prior arbitration

proceeding is a legal defense that, in turn, is a component of the dispute on the

merits and must be considered by the arbitrator, not the court.") (citations omitted).

Therefore, the narrow issue is whether Rogers' exceeded his jurisdiction by

"unjustifiably ignor[ing] the plain language" of Paragraph Sixteen of the parties'

agreement when he referred the parties' dispute to a merit PLB, rather than to ARB

No. 594.  Doc. 22 at 11; doc. 20 at 17-18.  This court can disturb Rogers' award

only if the answer is yes.

As stated earlier, Rogers' threshold issue was whether a merit PLB has

jurisdiction over the parties' dispute.  Doc. 18-1 at 4.  He reached this issue when he

---

[8] Plaintiff does not allege that Defendant did not "comply with the requirements of this chapter," or "fraud or corruption by a member."  45 U.S.C. § 153 First (q).

found that Plaintiff's *res judicata* and estoppel defenses were merit arguments, and therefore, the parties' dispute was subject to the jurisdiction of a merit PLB. Rogers held also that he could decide only whether the parties' dispute should be referred to a § 3 merit PLB, and that he had "no power to refer the merits dispute to SBA 594 [RLA 45 U.S.C. § 157 Board]."  Doc. 18-1 at 4.  Rogers' decision was rational and within the scope of his restricted jurisdiction.  No reasonable basis exists for this court to overturn it.

Further, Plaintiff's argument that Paragraph Sixteen requires referral of the dispute to ARB No. 524 is unpersuasive.  Rogers did not interpret Paragraph Sixteen because he had no authority to do so as a procedural neutral.  Rogers' sole role was to determine whether a dispute on the merits existed that required an interpretation of the parties' agreements.  Significantly, Plaintiff's Paragraph Sixteen argument does not destroy the merit PLB's jurisdiction over the parties' dispute based on Plaintiff's merit based defense.

Plaintiff also argues that Rogers "failed to explain exactly what provisions of the Act prohibited him from applying the parties' agreement, nor did he provide any precedent, authority or provision of the law or agreement to support his conclusion." Doc. 22 at 13.  Interestingly, Plaintiff has not identified any authority that supports a different result.  Without more, Plaintiff's bare allegation does not warrant a finding

that the arbitrator acted unreasonably.  *See Osram*, 87 F.3d at 1264 (citation omitted).

Based on this court's narrow scope of review of Rogers' award, court interference is not warranted.  *United Steelworkers*, 363 U.S. at 599.  Rogers' decision is neither irrational nor exceeded the scope of his authority.  *Butterkrust Bakeries*, 726 F.2d at 699; 45 U.S.C. § 153 First (q).  Because the award is not "wholly baseless and completely without reason," this court is not authorized to upset it.  *Gunther v. San Diego & Ariz. East. Ry. Co.*, 382 U.S. 257, 261 (1965).  Therefore, Rogers' decision stands.

## IV.  CONCLUSION

Procedural PLB No. 7309 was a final decision subject to this court's review.  Therefore, Defendant's motion to dismiss, doc. 17, is DENIED.  Further, Plaintiff cannot show that Rogers' decision to refer the dispute to a merit PLB was irrational or that he exceeded the scope of his authority.  Therefore, Defendant's motion for summary judgment is GRANTED, doc. 17, and Plaintiff's motion for summary judgment is DENIED, doc. 19.

Done the 23rd day of August, 2010.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE